UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KENNETH ERIC ZYSK,

        Petitioner,

                                      CASE NO. 2:07-CV-10282

    v.                               JUDGE ROBERT H. CLELAND

                                        MAGISTRATE JUDGE PAUL J. KOMIVES

MILLICENT D. WARREN,

        Respondent.

_____/


## REPORT AND RECOMMENDATION


*Table of Contents*

| | | |
|---|---|---|
| I. | RECOMMENDATION | 2 |
| II. | REPORT | 2 |
| | A. *Procedural History* | 2 |
| | B. *Factual Background Underlying Petitioner's Conviction* | 4 |
| | C. *Standard of Review* | 6 |
| | D. *Counsel Claims (Claim I)* | 8 |
| |     1. *Denial of Substitute Counsel* | 8 |
| |         a. Clearly Established Law | 8 |
| |         b. Analysis | 10 |
| |     2. *Ineffective Assistance of Counsel* | 14 |
| |         a. Clearly Established Law | 15 |
| |         b. Analysis | 16 |
| | E. *Perjured Testimony (Claim II)* | 20 |
| |     1. *Clearly Established Law* | 20 |
| |     2. *Analysis* | 21 |
| | F. *Sufficiency of the Evidence (Claim III)* | 23 |
| |     1. *Clearly Established Law* | 24 |
| |     2. *Analysis* | 25 |
| |         a. Explosive Device Conviction | 25 |
| |         b. Conspiracy Conviction | 27 |
| | G. *Lesser Offense Instructions (Claim IV)* | 30 |
| | H. *Conclusion* | 31 |
| III. | NOTICE TO PARTIES REGARDING OBJECTIONS | 31 |

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Kenneth Eric Zysk is a state prisoner, currently confined at the Thumb Correctional Facility in Lapeer, Michigan.

        2.      On October 10, 2003, petitioner was convicted of possession of an explosive device, MICH. COMP. LAWS § 750.211a; conspiracy to assault with intent to rob while armed, MICH. COMP. LAWS §§ 750.89, 750.157a; and conspiracy to assault with intent to murder, MICH. COMP. LAWS §§ 750.83, 750.157a, following a jury trial in the Macomb County Circuit Court. On October 29, 2003, he was sentenced to concurrent terms of 15-25 years' imprisonment for the explosives conviction and 13-20 years' imprisonment for each of the conspiracy convictions.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      EVIDENCE WAS INSUFFICIENT TO CONVICT MR. ZYSK OF POSSESSION OF AN EXPLOSIVE DEVICE CAUSING INJURY, OR OF CONSPIRACY TO COMMIT ASSAULT WITH INTENT TO MURDER.

        II.     THE TRIAL COURT ERRED IN FAILING TO DELIVER JURY INSTRUCTIONS WHICH WERE COMMENSURATE WITH MR. ZYSK'S DEFENSE AND WITH THE EVIDENCE ADDUCED AGAINST HIM; AND TRIAL COUNSEL ERRED IN FAILING TO MAKE AN APPROPRIATE OBJECTION AND REQUEST IN THAT SAME REGARD.

        III.    MR. ZYSK WAS DEPRIVED OF THE CONSTITUTIONAL RIGHT TO REPRESENTATION BY COUNSEL, WHERE THE TRIAL COURT IGNORED HIS COMPLAINTS ABOUT APPOINTED COUNSEL, AS WELL AS COUNSEL'S OWN MOTION TO WITHDRAW DUE TO A BREAKDOWN IN THEIR RELATIONSHIP; AND WHERE THE COURT

2

DID NOT APPOINT NEW COUNSEL NOR AFFORD MR. ZYSK THE
OPPORTUNITY TO RETAIN COUNSEL OF HIS CHOICE.

Petitioner also attempted to file a *pro se* supplemental brief raising two additional claims:

I.   WHEN THE GOVERNMENT KNOWINGLY USED PERJURED
TESTIMONY TO CONVICT DEFENDANT, HE COMMITTED
PROSECUTORIAL MISCONDUCT, DENYING DEFENDANT OF HIS
CONSTITUTIONAL DUE PROCESS RIGHTS, REQUIRING REVERSAL
AND NEW TRIAL.

II.  THE ACCUMULATIVE EFFECT OF TRIAL COUNSEL'S NUMEROUS
ERRORS AND OMISSIONS DEPRIVED DEFENDANT OF HIS
CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND EFFECTIVE
ASSISTANCE OF COUNSEL, THEREFORE, A REVERSAL AND NEW
TRIAL IS WARRANTED.

The court of appeals found no merit to petitioner's claims and affirmed his conviction and sentence.

*See People v. Zysk*, No. 252550, 2006 WL 782366 (Mich. Ct. App. Mar. 28, 2006) (per curiam).

4.   Petitioner, proceeding *pro se*, sought leave to appeal the three issues raised by
counsel and the two issues raised in his supplemental brief to the Michigan Supreme Court.  The
Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People
v. Zysk*, 476 Mich. 867, 720 N.W.2d 275 (2006).

5.   Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus
on January 18, 2007.  As grounds for the writ of habeas corpus, he raises the substitute counsel,
ineffective assistance of counsel, perjured testimony, sufficiency of the evidence, and jury
instruction claims that he raised in the state courts.

6.   Respondent filed her answer on July 24, 2007.  She contends that petitioner's claims
are without merit, and that petitioner's perjured testimony claim is also barred by petitioner's
procedural default in the state courts.

7.   Petitioner filed a reply to respondent's answer on December 17, 2007.

3

B.    *Factual Background Underlying Petitioner's Conviction*

The pretrial proceedings and evidence adduced at trial were accurately summarized in the

brief submitted by petitioner's counsel in the Michigan Court of Appeals:

> The charges alleged that, on December 10, 2002, Mr. Zysk and John Matthew
> Lloyd conspired to throw a Molotov cocktail at Kevin Kendrick with the intent to rob
> him, at the King's Motel in Roseville, Michigan.  Mr. Zysk denied committing the
> offense.   At a pretrial proceeding, Mr. Zysk complained about his attorney's
> representation and moved "to dismiss" him.  The court disregarded his complaint,
> and further opined that Mr. Zysk's appointed counsel, Mark Haddad, was able to
> adequately represent Mr. Zysk. [Plea Withdrawal 9/25/03, pp 6-7].
>
> At the beginning of the trial, Mr. Haddad himself moved to withdraw as
> counsel.  He indicated that he could not effectively represent Mr. Zysk or prepare to
> defend him at trial, because there had been a complete breakdown in the attorney-
> client relationship.  The court reiterated its opinion, based on its acquaintance with
> Mr. Haddad, that counsel was capable of "conduct[ing] a very vigorous and
> professional defense" on Mr. Zysk's behalf.  The court then asked Mr. Zysk, "I
> would manage [sic] you want to have your trial, don't you, sir?"  Mr. Zysk replied,
> "Yes, sir."  However, the court did not inquire about the nature of the conflict, or
> ascertain whether Mr. Zysk wanted an adjournment so that he could retain counsel
> of his choice, nor did the court otherwise respond to or rule on counsel's motion to
> withdraw. [Trial 10/9/03, pp 4-5].
>
> At trial, Michelle Vanarsdale testified that she was in a motel room with Mr.
> Zysk and Mr. Lloyd, when they said that Kevin Kendrick had cheated Lloyd by
> selling him soap instead of crack cocaine, and Mr. Lloyd said "he would like to kill
> the motherfucker."  Mr. Zysk suggested revenge, and filled 40-ounce bottles of
> Milwaukee's Best Beer with paint thinner and rags, which they intended to use to
> assault Kendrick and take his money. Mr. Zysk dialed Kendrick's telephone number,
> handed the phone to Lloyd, and Lloyd asked Kendrick to come to the hotel to make
> "another transaction."  The two men left the room when a horn honked outside.
> Vanarsdale later heard commotion and noticed that the police had arrived.  When she
> looked outside, she saw a small fire.  Vanarsdale opined that Mr. Zysk encouraged
> Mr. Lloyd, and Lloyd "just kind of went along with it stupidly."  She admitted that
> she was dating Lloyd tat the time. [Trial 10/10/03, pp 5-9, 13-14, 20].
>
> Kevin Kendrick denied that he sold drugs or had ever had a drug transaction
> with John Lloyd, although he conceded that he had a pending drug case. [Trial
> 10/10/03, pp 47-50].  He claimed that he drove from his home in Clinton Township
> to the King's Motel in Roseville at 10:30 the night in question, in order to take John
> Lloyd to the store, which was right down the street from Lloyd. [Trial 10/10/03, pp
> 50-53].  He said that, when he arrived, Mr. Zysk was standing beside a red truck with
> his back facing him.  He honked his horn and Mr. Lloyd came out.  Mr. Zysk said,
> "Matt, move, it's hot," and when Lloyd moved, Mr. Zysk threw a flaming beer bottle

4

into his car. [Trial 10/10/03, pp 36-37].

Mr. Kendrick said he tried to get out of the car but could not because Mr. Zysk was holding the door. His car hit the building, he got out, and fought Mr. Lloyd. Mr. Zysk tried to hold him while Lloyd hit him. Lloyd fell and backed off. Then Kendrick fought Mr. Zysk. Mr. Zysk fell, tried to bit[e] Kenrrick's ankle, and struck his hand in Kendrick's pocket. When Kendrick got loose, he moved his car and threw the burning bottle out of the window toward the wall, which resulted in a burn to his hand. [Trial 10/10/03, pp 40-41].

Mr. Kendrick said Mr. Zysk called police from his cell phone and reported that he was being attacked by three Black men, and that one had a gun and poured gasoline on his car, while he himself poured liquid from a beer bottle over his own truck. Kendrick identified in photographs his burnt car seat and two Milwaukee's Best beer bottles with gloves. [Trial 10/10/03, pp 42-44].

Officer Steven Dzierzawski responded to a call regarding a man with a gun. When he arrived, he saw two men who appeared to have been fighting. Near a brick wall, he saw a broken 40-ounce beer bottle, with liquid that smelled like paint thinner coming out. In the bed of Mr. Zysk's pickup truck he saw three empty 40-ounce Milwaukee's Best Ice beer bottles that matched the broken bottle. There was a charred brown jersey work glove in the middle of the parking lot, and another brown jersey glove in front of a hotel room, which smelled like mineral spirits or some kind of accelerant. He opined that paint thinner is flammable. He observed a burnt spot in Kendrick's car. He described items depicted in photographs he took, including a small fire near a brick wall, and a can of paint thinner in the truck bed. There was no evidence of an explosion. [Trial 10/10/03, pp 57-65, 68, 73].

The parties stipulated to admit a laboratory report which indicated that police found paint thinner at the scene. [Trial 10/10/03, p 75].

Kenneth Zysk testified that he did not agree to or attempt to kill, rob or otherwise harm Kevin Kendrick. He said he was painting at the King's Motel and had paint thinner on his truck in that regard. He had witnessed Kendrick sell drugs to John Lloyd. [Trial 10/10/03, pp 80-83]. On the night in question, Mr. Zysk was standing in the parking lot when Kendrick offered to sell him drugs. When he declined, Kendrick took out a bottle bomb, lit it and threw it at him. He and Kendrick got into a scuffle, Lloyd fled, and Kendrick tried to pull a gun out from his shirt. [Trial 10/10/03, pp 84-85]. He agreed that a photograph in evidence depicted the back of his truck. [Trial 10/10/03, p 94].

Mr. Zysk admitted to writing a letter to Judge Miller stating that John Lloyd was not responsible for the crime and accepting full responsibility for the charges. He said he wrote the letter at Lloyd's request, to help Lloyd out. [Trial 10/10/03, p 87-88].

Office Matthew Dickey testified on rebuttal that he responded to a call that someone was holding another person at gunpoint. When he arrived, Kevin Kendrick was not armed. Over objection that it was improper rebuttal, he added that Kendrick's car was filled with smoke. [Trial 10/10/03, pp 98-99]. Officer Dickey said that Mr. Zysk reported that he rather than Kendrick was the victim; that

Kendrick had attempted to make a dope transaction; that Mr. Zysk had declined; and Kendrick then pulled out a bottle bomb, lit it and threw it at him. [Trial 10/10/03 pp 101, 106].

Def.-Appellant's Br. on Appeal, in *People v. Zysk*, No. 252550 (Mich. Ct. App.), at 1-4.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

6

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements

7

of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Counsel Claims (Claim I)*

Petitioner raises two claims relating to his counsel.  First, he contends that he was denied his right to counsel by the trial court's failure to grant his request for substitute counsel and counsel's motion to withdraw.  Second, he contends that counsel rendered constitutionally ineffective assistance at trial.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Denial of Substitute Counsel*

Petitioner first contends that he was denied his Sixth Amendment right to counsel when the trial court denied his request for substitute counsel and his counsel's motion to withdraw.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a. Clearly Established Law*

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. amend. VI.  This right contemplates a corollary right to the counsel of one's choice, and thus a criminal defendant who has the desire and the financial means to retain his own counsel generally "'should be afforded a fair opportunity to secure counsel of his choice.'"  *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (quoting *Powell v. Alabama*, 287 U.S. 45, 53

(1932)).  However, "[a]lthough the Sixth Amendment contemplates a right to counsel of choice, that

right is generally cognizable only to the extent defendant can retain counsel with private funds; an

indigent defendant does not have an absolute right to choose appointed counsel."  *Haynie v.

Furlong*, No. 98-1177, 1999 WL 80144, at *1 (10th Cir. Feb. 17, 1999).  As the Supreme Court has

recently explained, "the right to counsel of choice does not extend to defendants who require counsel

to be appointed for them."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).  Further, the

right to counsel of one's choice is not absolute, and "is circumscribed in several important respects."

*Wheat v. United States*, 486 U.S. 153, 159 (1988).  Importantly, the right to counsel of one's choice

"must be balanced against the court's authority to control its own docket, and a court must beware

that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court."

*United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988); *see also*, *Lockett v. Arn*, 740 F.2d

407, 413 (6th Cir. 1984) ("Although a criminal defendant is entitled to a reasonable opportunity to

obtain counsel of his choice, the exercise of that right must be balanced against the court's authority

to control its docket.").  Further, as the Supreme Court has explained, "while the right to select and

be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential

aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than

to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  *Wheat*,

486 U.S. at 159.  Thus, "in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses

on the adversarial process, not on the accused's relationship with his lawyer as such.'"  *Id.* (quoting

*United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984).  Because an indigent defendant has no

absolute right to appointed counsel of his choice, and because the focus of the Sixth Amendment

inquiry is on effective advocacy, "[a] criminal defendant who is dissatisfied with appointed counsel

must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991); *accord United States v. Blaze*, 143 F.3d 585, 593 (10th Cir. 1998); *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).

### b.  Analysis

Prior to trial, petitioner entered a guilty plea to two of the counts against him, in exchange for dismissal of the other three charges against him.  At the time of sentencing, however, petitioner sought to withdraw his plea, and was permitted to do so by the court.  At the same hearing, the following exchange occurred:

> DEFENDANT:      And also I'd like to put in a motion to dismiss my attorney.
> THE COURT:      Why do you want to do that?
> DEFENDANT:      Because I've asked for transcripts and motion for discovery from the beginning, and I never received those.  But I was willing to take this plea.
> THE COURT:      We're not going to let you play, you know, musical chairs with your attorneys.  Now, let me tell you something.  Mr. Haddad is a very highly respected and skilled attorney in this jurisdiction and he handles dozens and dozens and dozens of capital cases.  So I am not going to allow you to dismiss your attorney.  You got one of the best attorneys in this jurisdiction working for you.  So that motion is denied.

Withdrawal of Plea Tr., dated 9/25/03, at 6-7.  At the start of trial, petitioner's counsel sought to withdraw:

> MR. HADDAD:      Your Honor, good morning. . . .  I am prepared to go to trial. I'm familiar with the police report, the preliminary examination transcripts and all of the other matters. However, in meeting with my client this morning, he, again indicates that he does not wish me to, in any way, participate or partake in his criminal defense.  He wishes to obtain substitute counsel.  I know he's made that statement to the Court on, at least, one or two occasions before.
>
> There's no jury in the courtroom, and I just want to

10

complete this record.  In response to what I think the Court might ask me, I can tell you that this is going to be an extremely difficult case to try.  Mr. Zysk has provided me with no defense legal or factual.  After spending nearly a week preparing this case for trial, I discovered yesterday that Mr. Zysk wrote a letter to your Honor which contains some incriminating statements in which, in fact, is tantamount to a confession, and he wrote that letter without my knowledge, and certainly without my consent.

Given all of these factors, I don't see how I can effectively represent Mr. Zysk.  He refuses to discuss the case with me.  Merely reiterates that he wishes substitute counsel.  I have no choice but to ask the Court to allow me to withdraw.

THE COURT:   Well, as we mentioned before, and I'll say it again, having known Mr. Haddad for many years and having personal knowledge of his reputation as an excellent criminal attorney in this jurisdiction, I have absolutely no reservations about Mr. Haddad's capabilities to conduct a very vigorous and professional defense in this case.   No reservations whatsoever.

This is very rapidly approaching the very, very old case.  I would [imagine] you want to have your trial, don't you, sir?

DEFENDANT:   Yes, sir.  As a matter of fact, I would have been willing to have it, or at lest, negotiate a plea bargaining a while back, but this is getting ridiculous.

THE COURT:   I agree with you.

Jury Trial Tr., Vol. I, at 3-5.

On appeal petitioner argued, as he does here, that the trial court's failure to appoint substitute counsel violated his Sixth Amendment right to counsel.  The Michigan Court of Appeals rejected this claim, explaining that "substitute counsel is warranted only on a showing of good cause and where substitution will not unreasonably disrupt the judicial process."  *Zysk*, 2006 WL 782366, at *4, slip op. at 5, and concluding that petitioner has failed to establish good cause for substitution. The Court should conclude that this determination was reasonable.

Petitioner failed to establish good cause for substitution of counsel, "such as a conflict of

11

interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith*, 923 F.2d at 1320. Petitioner does not allege that there was any irreconcilable conflict between himself and counsel, or that counsel was acting with a conflict of interest. In his request for substitute counsel, petitioner contended that counsel had not provided him with discovery or transcripts, but this is insufficient to constitute the type of complete breakdown justifying appointment of substitute counsel. *See United States v. Carillo*, 161 Fed. Appx. 790, 793 (10th Cir. 2006); *cf. Morris v. Slappy*, 461 U.S. 1, 13-14 (1983) (there is no constitutional right to a "meaningful attorney-client relationship."). It is apparent from the record that petitioner's problems with counsel focused on differences in trial strategy. These differences provided no basis for a substitution of counsel at such a late stage in the proceedings. *See United States v. Romero*, 27 Fed. Appx. 806, 807-08 (9th Cir. 2001); *United States v. Castro*, 908 F.2d 85, 88-89 (6th Cir. 1990); *Matsushita v. United States*, 842 F. Supp. 762, 763-64 (S.D.N.Y. 1994).

It is true that counsel indicated on the day of trial that petitioner had refused to speak with him, suggesting a complete breakdown in communication. However, petitioner "has cited no Supreme Court case – and we are not aware of any – that stands for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust." *Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc); *see also*, *United States v. Vasquez*, ___ F.3d ___, ___, 2009 WL 735843, at *4 (6th Cir. Mar. 23, 2009). On the contrary, the courts have generally held that "[a] unilateral refusal by the defendant to communicate with counsel may justify denying a request to substitute counsel, for example, where the defendant's refusal is frivolous or manipulative, or arises out of general unreasonableness or manufactured discontent." *United States*

12

*v. Valerdi-Melgarejo*, 11 Fed. Appx. 796, 797 (9th Cir. 2001) (internal quotation omitted); *see also*, *Romero v. Furlong*, 215 F.3d 1107, 1114 (10th Cir. 2003).  Here, it is apparent from the record that the breakdown in communication was a unilateral refusal by petitioner to cooperate with counsel, and that counsel was well prepared to conduct petitioner's trial.  In these circumstances, petitioner cannot show that the Michigan Court of Appeals's determination that he failed to establish good cause for substitution of counsel was unreasonable.

Further, even assuming that the trial court erred by not granting counsel's motion to withdraw and appointing substitute counsel, petitioner's claim fails because any error was harmless.  As noted above, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably by represented by the lawyer whom he prefers."  *Wheat*, 486 U.S. at 159.  Thus, the courts that have considered the issue have concluded that "[u]nless [a defendant] can establish an ineffective assistance claim under *Strickland v. Washington* . . . any error in the [trial] court's disposition of [the defendant's] motion for appointment of substitute counsel is harmless."  *United States v. Graham*, 91 F.3d 213, 217 (D.C. Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *see also*, *United States v. Calderon*, 127 F.2d 1314, 1343 (11th Cir. 1997); *United States v. Zillges*, 978 F.2d 369, 372-73 (7th Cir. 1992); *Bowie v. Renico*, No. 00-10013, 2002 WL 31749162, at *11 (E.D. Mich. Nov. 6, 2002) (Lawson, J.); *Stephens v. Costello*, 55 F. Supp. 2d 163, 172 (W.D.N.Y. 1999).  As the Supreme Court has explained, "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."  *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989).  Because, as explained below, petitioner was not deprived of the effective assistance of counsel, he has "no cognizable complaint."

13

This conclusion is not altered by the Supreme Court's decision in *United States v. Gonzalez-Lopez*, *supra*. In that case, the Court held that a defendant who has been denied his Sixth Amendment right to counsel of his choice need not demonstrate that his actual trial attorney was defective, or that he was prejudiced by counsel's deficient performance. *See Gonzalez-Lopez*, 548 U.S. at 146. Further, the Court held that a denial of the right to counsel of one's choice is a structural error, and thus harmless error review does not apply to such a denial. *See id*. at 150-51. *Gonzalez-Lopez* is inapplicable here. That case involved a defendant who had retained counsel to represent him but was denied the right to have his retained counsel appear on his behalf. Nothing in that decision purported to alter the rules applicable to an indigent defendant's right to appointed counsel of his choice. On the contrary, the Court explicitly reaffirmed the *Wheat* and *Caplin & Drysdale* conclusions that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id*. at 151 (citing *Caplin & Drysdale*, 491 U.S. at 624; *Wheat*, 486 U.S. at 159). Thus, *Gonzales-Lopez* does not call into question the Court's prior observation that "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale*, 491 U.S. at 624; *see Garcia v. Quarterman*, No. H-06-0504, 2006 WL 2413714, at *14 (S.D. Tex. Aug. 18, 2006) (habeas relief not warranted based on failure to substitute appointed counsel where appointed counsel was not ineffective, notwithstanding *Gonzalez-Lopez*).

    2.    *Ineffective Assistance of Counsel*

Petitioner next contends that his trial counsel rendered constitutionally ineffective assistance at trial. Specifically, petitioner contends that counsel was ineffective for failing to: (1) request an instruction on lesser assault offenses; (2) work diligently on the case and discuss the case with him;

(3) obtain a copy of the 911 call which petitioner made on the night of the incident; (4) challenge the laboratory results regarding the explosive devices; (5) obtain a copy of his co-conspirator's prison visitation records; (6) obtain discovery regarding the witnesses' criminal records; and (7) seek suppression of his confession.  The Court should conclude that petitioner is not entitled to habeas relief on these ineffective assistance of counsel claims.

### a.   Clearly Established Law

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id*. at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id*.  at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).   "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

### b. Analysis

Petitioner first contends that counsel was ineffective for failing to request instruction on lesser included offenses of assault with intent to commit murder. However, the Michigan Court of Appeals concluded that such lesser offense instructions were not supported by a rational view of the evidence, and thus that the instructions were not warranted by state law. In analyzing petitioner's ineffective assistance of counsel claim, this expression of state law is binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action."). Thus, any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner next contends that counsel was ineffective because counsel failed to meet with him, failed to properly prepare for trial, stipulated to the lab results, and failed to obtain discovery of his co-conspirator's prison visitation logs and the witnesses' criminal records. To the extent that petitioner raises a general challenge to counsel's pretrial preparation, the record belies petitioner's

16

claim that counsel was unprepared. A review of the record shows that counsel filed pretrial motions, extensively cross-examined the witnesses, and was familiar with the evidence in the case. Further, the record shows that it was petitioner who refused to communicate with counsel. With respect to petitioner's specific challenges to counsel's preparation, his claims are likewise without merit.

Petitioner contends that counsel should have obtained the jail visitation logs, which would have shown that the Michelle Vanarsdale, a prosecution witness, visited petitioner's co-defendant at the jail, contrary to her testimony at trial. At trial, Vanarsdale testified that she had been dating John Matthew Lloyd, but that the relationship had ended in January 2003. She denied having had any contact with Lloyd since that time. *See* Trial Tr., Vol. II, at 17-18. The jail logs, submitted by petitioner as Exhibit B to his habeas application, show that Vanarsdale visited Lloyd in jail on January 20 and 27, and February 3, 2003. Although there was a visit in early February, the jail log is consistent with Vanarsdale's testimony that she and Lloyd had ended their relationship in early 2003 and that she had not contacted him or visited him in jail since that time. Thus, petitioner cannot show any prejudice from counsel's failure to obtain the jail visitation logs.

With respect to the transcript of the 911 call, petitioner claims that a transcript would have shown that he called the police claiming to be the victim of an assault perpetrated by three black males. However, at trial, petitioner did not claim that three black males had attacked him, only Kendrick. Further, Kendrick himself testified that petitioner had called 911 and reported that he was being attacked by three black males. *See* Trial Tr., Vol. II, at 42-43. Thus, the contents of the 911 call were before the jury and undisputed by the prosecution. The prosecution did dispute that petitioner's statements to the 911 operator accurately reflected the events in question, but the actual transcript of the 911 call would have added nothing to petitioner's defense in light of the fact that

17

no one disputed what he had said to the 911 operator.  Thus, petitioner cannot show that he was prejudiced by counsel's failure to obtain the 911 transcript.

Nor can petitioner show that counsel was ineffective for failing to obtain discovery of the prosecution witnesses' criminal histories.  However, the record shows that counsel did in fact file a motion for discovery to obtain those criminal histories, a motion which was renewed on the morning of trial.  *See* Trial Tr., Vol. I, 6-7.  Further, counsel cross-examined Kendrick extensively regarding his pending drug case.  *See id*., Vol. II, at 47-49.  The record shows that counsel sought to obtain the criminal histories and argued that he was entitled to do so, and petitioner does not suggest anything more that counsel could have done.  Further, petitioner offers nothing but speculation that the witnesses had criminal histories which would have been admissible at his trial.  Under Rule 609, the only crimes which would have been admissible to impeach the witnesses would have been convictions for crimes involving an element of theft or dishonesty.  *See* MICH. R. EVID. 609(a).  Petitioner has offered nothing to show that either witness had been convicted of such a crime.  Thus, petitioner can show neither that counsel was deficient nor that he was prejudiced with respect to the witnesses' criminal histories.[1]

---

[1]Relying on the Federal Rules of Evidence, petitioner contends that any prior conviction of the witnesses would have been admissible for impeachment.  Federal Rule 609 provides that evidence that a witness has been convicted of a crime "shall be admitted, subject to Rule 403."  FED. R. EVID. 609(a)(1).  The Michigan rule, however, is markedly different from the federal rule.  The Michigan rule expressly limits the types of convictions which are admissible for impeachment purposes:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross examination, and
>> (1) the crime contained an element of dishonesty or false statement, or
>> (2) the crime contained an element of theft, and
>> (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and
>> (B) the court determines that the evidence has significant probative value on the

Likewise, petitioner cannot show that counsel was ineffective for stipulating that the broken bottle found at the scene and the can taken from the back of his truck contained paint thinner. However, counsel could have reasonably concluded that it was better to stipulate to these matters than to allow more detailed testimony to be put before the jury. Further, petitioner has pointed to nothing other than his own speculation that the containers held anything other than paint thinner.

Finally, petitioner contends that counsel was ineffective for failing to seek suppression of his confession. However, the police did not take a confession from petitioner. They took a statement, but that statement was consistent with petitioner's trial testimony. *Compare* Trial Tr., Vol. II, at 83-85 (petitioner's testimony on cross-examination), *with id.*, at 106-07 (rebuttal testimony of Officer Dickey). In addition, there was testimony concerning a letter petitioner had written to the trial judge on Lloyd's behalf, in which petitioner took full responsibility for the crimes. *See id.* at 87-88, 91-92. However, petitioner offers no basis that counsel would have had for seeking suppression of his statements to the police or his letter to the judge. Petitioner does not allege that either statement was involuntary, the officer testified that he had given petitioner his *Miranda* warnings prior to taking the statement and there is nothing in the record to contradict this testimony, and petitioner's letter to the judge was an unsolicited statement which he volunteered,

---

issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

MICH. R. EVID. 609(a). As the court explained in *People v. Allen*, 429 Mich. 558, 420 N.W.2d 499 (1988), this rule creates three categories of offenses: (1) crimes for which dishonesty or false statement is an actual statutory element of the offense, which are *per se* admissible for impeachment purposes; (2) theft crimes punishable by more than one year imprisonment, which are admissible only if probative of credibility and the probative value outweighs its prejudicial effect; and (3) all other crimes, which are *per se* inadmissible to impeach credibility. *See Allen*, 429 Mich. at 605-06, 420 N.W.2d at 522. Thus, under the Michigan rule applicable in petitioner's trial, any convictions other than those involving an element of theft or dishonesty would not have been admissible to impeach the witnesses.

19

not a result of custodial interrogation. Nothing in the record suggests, and petitioner himself does not argue, that either his statements to the police or his letter to the judge were involuntary or taken in violation of his Fifth Amendment privilege against self-incrimination. Thus, petitioner cannot show that counsel was ineffective for failing to move to suppress his statements.

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

E.      *Perjured Testimony (Claim II)*

Petitioner next contends that he was denied a fair trial when the prosecutor presented perjured testimony at trial. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected, *see id*. at 269. It is equally well established, however, that petitioner bears the burden of proving that the testimony amounted to perjury. As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured. Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v.*

20

*Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976). Thus, to succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material. *See Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1999). As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'"). In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

2.      *Analysis*

At trial, both the prosecution and the defense viewed the case as involving a drug sale, and identified Kendrick as a drug supplier. The prosecution's theory was that petitioner and Lloyd assaulted Kendrick as revenge for a previous drug deal in which Kendrick had sold them fake drugs. *See* Trial Tr., Vol. I, at 51-52 (opening statement); Vol. II, at 115 (closing argument). The defense theorized that Kendrick was a drug supplier who became upset and attacked petitioner when petitioner refused to buy drugs. *See* Trial Tr., Vol. I, at 54. Upon direct examination by the

21

prosecutor, Kendrick testified about the events of the assault.  On cross-examination, although admitting that he had a pending drug case, he denied selling drugs to petitioner or Lloyd and denied that he was a drug dealer.  *See id.*, Vol. II, at 49-50.  Nevertheless, both the prosecutor and defense counsel agreed that Kendrick was lying and argued as much to the jury.  Defense counsel argued that Kendrick was lying, and that therefore the jury should disregard all of his testimony.  *See id.*, at 119.  The prosecutor argued that Kendrick was lying, but that the jury should ignore this lie because it was based on the fact that Kendrick was not going to admit to a crime under oath in front of the judge and police officers who were present.  *See id.*, at 115-16, 122.

Here, the prosecutor neither presented false testimony to the jury nor allowed false testimony to go uncorrected.  The prosecutor argued throughout the trial that Kendrick was a drug dealer, a characterization with which petitioner's counsel agreed.  Further, the prosecutor argued throughout the trial that Kendrick had sold drugs to petitioner or Lloyd, and showed up at the hotel on the night of the assault to engage in a drug transaction.  Although petitioner disputed that he had ever bought drugs from Kendrick, he too agreed that Kendrick was at the hotel for the purpose of selling drugs.  The prosecutor did not elicit any testimony from Kendrick denying that he was at the hotel to sell drugs; rather, this testimony was elicited by defense counsel on cross-examination.  After Kendrick denied going to the hotel to sell drugs, the prosecutor questioned him regarding his denial.  Although Kendrick did not admit to lying, the prosecutor did elicit from him that he had reason to fear telling the truth and incriminating himself.  *See* Trial Tr., Vol. II, at 55.  And, during closing argument, the prosecutor twice indicated to the jury that Kendrick was lying about the drug issue to avoid incriminating himself.  *See id.* at 115-16, 122.  In these circumstances, the prosecutor neither presented nor allowed to go uncorrected any false testimony; on the contrary, the prosecutor agreed

22

with petitioner's counsel that Kendrick had lied about this issue and explained as much to the jury. Thus, petitioner cannot show that he was denied his right to due process by Kendrick's allegedly false testimony. *See United States v. Olano*, 62 F.3d 1180, 1197 (9th Cir. 1995) (no *Napue* violation where false testimony of government witness was elicited on cross-examination, prosecutor challenged testimony on redirect examination, and prosecutor conceded in closing argument that witness had lied).

Petitioner also contends that Vanarsdale committed perjury because she denied having visited Lloyd in jail, testified that there were two Molotov cocktails during the preliminary examination when there was only one, and testified during the preliminary examination that the glove used in the device was brown while testifying at trial that it was beige. As noted above, Vanarsdale was not asked whether she ever visited Lloyd in jail, but asked whether she had done so since she broke up with him in January 2003. The jail visitation record supports her testimony, although she was slightly off on the dates, having visited Lloyd on February 3. Thus, petitioner has not shown that Vanarsdale committed perjury with respect to this testimony, much less that the prosecutor knew her testimony to be perjured. The other matters identified by petitioner reflect merely minor inconsistencies insufficient to establish that Vanarsdale's trial testimony amounted to perjury. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Sufficiency of the Evidence (Claim III)*

Petitioner next challenges the sufficiency of the evidence against him on two grounds. First, with respect to the explosive device conviction, petitioner argues that there was insufficient evidence to show that he caused the victim's injuries. Second, with respect to the conspiracy to assault with

23

intent to commit murder conviction, petitioner contends that there was insufficient evidence that he had the specific intent to kill the victim. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

      1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S.

at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

    2.    *Analysis*

*a. Explosive Device Conviction*

    Petitioner first challenges his conviction for possession of an explosive device causing injury. At the time of the assault, the relevant statute provided:

> "(1) A person shall not manufacture, buy, sell, furnish, or have in his or her possession any device that is designed to explode or that will explode upon impact or with the application of heat or a flame, or that is highly incendiary, with the intent to frighten, terrorize, intimidate, threaten, harass, injure, or kill any person . . . .
> (2) A person who violates this subsection is guilty of a crime as follows:
> * * * *
> (c) If the violation causes physical injury to another individual, other than serious impairment or a body function, the person is guilty of a felony punishable by imprisonment for not more than 25 years or a fine of not more than $20,000.00, or both."

*Zysk*, 2006 WL 782366, at *1, slip op. at 1-2 (quoting MICH. COMP. LAWS § 750.211a). Petitioner contends that the prosecution presented insufficient evidence regarding the causation element, because the evidence showed that the Molotov cocktail was thrown into the victim's car, and the victim was injured only when he picked it up and threw it out of the car. Thus, petitioner argues, the victim caused his own injuries.

    The Michigan Court of Appeals rejected this argument, explaining that "[i]n the criminal law context the term 'cause' has acquired a unique, technical meaning." *Zysk*, 2006 WL 782366, at *1, slip op. at 2. The court explained that "cause" includes both the concept of factual cause and

25

proximate cause. "'In determining whether a defendant's conduct is a factual cause of the result, one must ask, "but for" the defendant's conduct, would the result have occurred.'" *Id*. (quoting *People v. Schaefer*, 473 Mich. 418, 435-36, 703 N.W.2d 774, 785 (2005)). Proximate cause exists when "'the victim's injury [is] a "direct and natural" result of the defendant's actions.'" *Id*. at *2, slip op. at 2 (quoting *Schaefer*, 473 Mich. at 436, 703 N.W.2d at 785). In determining whether proximate cause exists, the court must consider whether any intervening cause superceded the defendant's conduct so as to break the causal link between the defendant's conduct and the victim's injury. *See id*. "'The linchpin in the superceding cause analysis . . . is whether the intervening cause was foreseeable based on an objective standard of reasonableness. If it was reasonably foreseeable, then the defendant's conduct will be considered a proximate cause. If, however, the intervening act by the victim or a third party was not reasonably foreseeable . . . then generally the causal link is severed and the defendant's conduct is not regarded as a proximate cause of the victim's injury or death.'" *Id*. (quoting *Schaefer*, 473 Mich. at 437-38, 703 N.W.2d at 786). Applying these standards, the court of appeals found that the prosecution had presented sufficient evidence of both factual and proximate causation:

> As conceded by defendant, the prosecution presented evidence that defendant threw a burning bottle into the complainant's car, and that the complainant was burned when he threw the bottle back out of his car. Absent defendant's conduct, the complainant would not have been injured. It was reasonably foreseeable that the complainant would remove the burning object thrown into his car to prevent the car from exploding. Thus, the causation element of the crime was sufficiently established.

*Id*. at *2, slip op. at 3. The Court should conclude that this determination was reasonable.

There is no question that the prosecution presented sufficient evidence of factual causation. As noted by the court of appeals, the prosecution presented evidence which, if believed by the jury,

established that petitioner threw a Molotov cocktail into the victim's car, and that the victim injured

his hand when he threw the bottle back out of the car. Had petitioner not thrown the bottle into the

victim's car–that is, "but for" the defendant's actions–the victim would not have been injured.

Likewise, this evidence is sufficient to establish that the victim's injuries were proximately caused

by petitioner's actions. There is a direct causal connection between petitioner's throwing the

Molotov cocktail and the injury received by the victim, who attempted to remove the bottle from his

car. Further, it was reasonably foreseeable that the victim would attempt to protect his property by

putting out or removing the source of the fire burning in his car. "Typically, . . . when a purportedly

intervening act is a response to a defendant's criminal actions or a reaction to the conditions created

by the defendant, the act is deemed foreseeable and, therefore, will not serve to break the chain of

legal causation so as to relieve the defendant of responsibility for the ultimate consequences of his

actions." *State v. Collins*, 919 A.2d 1078, 1096 (Conn. Ct. App. 2007); *see also*, *People v. Rideout*,

272 Mich. App. 602, 609, 727 N.W.2d 630, 636 (Mich. Ct. App. 2006) ("a responsive intervening

cause will establish proximate cause, while a coincidental intervening cause will not unless it was

foreseeable."), *rev'd in part on other grounds*, 477 Mich. 1062, 728 N.W.2d 459 (2007); 1 WAYNE

R. LaFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4(f)(4) (2d ed. 2007). Thus, the Michigan Court of

Appeals's rejection of petitioner's claim was reasonable, and the Court should conclude that

petitioner is not entitled to habeas relief on this claim.

### *b. Conspiracy Conviction*

Petitioner also contends that the prosecution presented insufficient evidence to sustain his

conviction for conspiracy to commit assault with intent to commit murder. Michigan law provides

that "[a]ny person who shall assault another with intent to commit the crime of murder, shall be

guilty of a felony[.]" MICH. COMP. LAWS § 750.83.  Under this provision, "the crime of assault with

intent to commit murder requires proof of three elements: '(1) an assault, (2) with an actual intent

to kill, (3) which, if successful, would make the killing murder.'" *Warren v. Smith*, 161 F.3d 358,

361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 581 N.W.2d 753, 759 (1998);

*People v. Hoffman*, 225 Mich. App. 103, 570 N.W.2d 146, 150 (1997)).  As with other mental-state

elements, intent to kill need not be proved by direct evidence, but rather may be proved by

circumstantial evidence and reasonable inferences drawn from the evidence.  *See Warren*, 161 F.3d

at 360; *Hoffman*, 225 Mich. App. at 111, 570 N.W.2d at 150.  Further, under Michigan law any

person who conspires with one or more other persons to commit an offense prohibited by law is

guilty of the crime of conspiracy, and, in the case of felonies, is punished to the extent he would

be punished if found guilty of the underlying substantive offense.  *See* MICH. COMP. LAWS §

750.157a(a).  Under Michigan law,

> [c]riminal conspiracy is a mutual understanding or agreement between two or more
> persons, expressed or implied, to do or accomplish some criminal or unlawful act.
> The gist of the offense lies in the unlawful agreement between two or more
> persons to do the unlawful act.  All the requisite elements of the crime of
> conspiracy are met when the parties enter into the mutual agreement, and no overt
> acts necessarily must be established.

*People v. Hamp*, 110 Mich. App. 92, 102, 312 N.W.2d 175, 180 (1981) (citations omitted); *see
also*, *People v. Buck*, 197 Mich. App. 404, 412, 496 N.W.2d 321, 327 (1992), *rev'd in part on other
grounds sub nom. People v. Holcomb*, 444 Mich. 853, 508 N.W.2d 502 (1993).  "Direct proof of
agreement is not required, nor is proof of a formal agreement necessary.  It is sufficient that the
circumstances, acts, and conduct of the parties establish an agreement." *People v. Cotton*, 191 Mich.
App. 377, 393, 478 N.W.2d 681, 688 (1991); *see also*, *Cameron v. Birkett*, 348 F. Supp. 2d 825, 839
(E.D. Mich. 2004) (Gadola, J., adopting Report of Komives, M.J.).  "'A two-fold specific intent is

28

required for conviction: intent to combine with others, and intent to accomplish the illegal objective.'" *Cameron*, 348 F. Supp. 2d at 839 (quoting *People v. Carter*, 415 Mich. 558, 568, 330 N.W.2d 314, 319 (1982)).

Petitioner contends that the prosecution presented insufficient evidence to establish that he intended to kill Kendrick or that he agreed with Lloyd to do so. However, Vanarsdale testified that Lloyd stated he wanted to kill Kendrick, petitioner suggested that they get revenge on Kendrick, and petitioner prepared the Molotov cocktails and lured Kendrick to the hotel. There was also evidence that petitioner threw an incendiary device at Kendrick. This evidence provided sufficient circumstantial evidence to show that petitioner and Lloyd agreed to kill Kendrick, and that petitioner possessed the intent to do so. *See Cameron*, 348 F. Supp. 2d at 840; *People v. Gaines*, No. 274721, 2009 WL 103229, at *1 (Mich. Ct. App. Jan. 15, 2009). This conclusion is not altered by the fact that Vanarsdale was the sole witness to the events leading up to the assault. *See Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985) (testimony of a single witness may be sufficient evidence if it establishes all of the elements of the crime). Nor is this conclusion altered by petitioner's argument that Vanarsdale was not credible and was motivated to lie to protect Lloyd. A reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). Further, the fact that the evidence may have supported another version of events–that petitioner was merely attempting to scare the victim or rob him–is irrelevant; the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt

29

to be sufficient.  *See Jackson*, 443 U.S. at 326.

In short, Vanarsdale's testimony, coupled with petitioner's actions, provided sufficient evidence for the jury to conclude that petitioner agreed with Lloyd to kill Kendrick and that he had the intent to do so.  Thus, the Michigan Court of Appeals's rejection of petitioner's claim was reasonable, and petitioner is not entitled to habeas relief on this claim.

G.      *Lesser Offense Instructions (Claim IV)*

Finally, petitioner contends that he was denied a fair trial by the trial court's failure to instruct the jury on lesser assault offenses.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Although the Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (trial court required to instruct *sua sponte* on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the Constitution does not requires a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001).  As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also*, *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002).  At a minimum, there is no clearly established Supreme Court law which requires the giving of a requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1).  *See Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001);

*Kuroda v. Bell*, No. 2:07-CV-12310, 2007 WL 1657410, at *2 (E.D. Mich. June 7, 2007) (Cohn, J.);

*Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (Tarnow, J.).   Thus, the Michigan

Court of Appeals's resolution of this claim was not contrary to, or an unreasonable application of,

clearly established federal law, and petitioner is therefore not entitled to habeas relief on this claim.

H.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

petitioner's claims did not result in a decision which was contrary to, or which involved an

unreasonable application of, clearly established federal law.   Accordingly, the Court should deny

petitioner's application for the writ of habeas corpus.

III.      <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.

§ 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver

of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health*

*& Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.

1981).   Filing of objections which raise some issues but fail to raise others with specificity, will not

preserve all the objections a party might have to this Report and Recommendation.   *Willis v.*

*Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation*

*of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).   Pursuant to E.D. Mich. LR 72.1(d)(2),

a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.   Any objection must

recite *precisely* the provision of this Report and Recommendation to which it pertains.   Not later

than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

s/Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 4/14/09

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on April 14, 2009.
>
> s/Eddrey Butts
> Case Manager